# IN THE COURT OF APPEALS OF IOWA

No. 19-0171
Filed April 17, 2019

**IN THE INTEREST OF E.D.,**
**Minor Child,**

**J.D., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Benton County, Cynthia S. Finley, District Associate Judge.

　　A mother appeals from the order terminating her parental rights to her child.

**AFFIRMED.**

　　Robert W. Davison, Cedar Rapids, for appellant mother.

　　Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

　　Annette Martin, Cedar Rapids, guardian ad litem and attorney for minor child.

　　Considered by Vogel, C.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

A mother appeals from the order terminating her parental rights to her child. She contends the State failed to prove the grounds for termination by clear and convincing evidence. She also contends termination is contrary to the child's best interests. We review her claims de novo. *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

**I. Background Facts and Proceedings.**

The State initiated child-in-need-of-assistance proceedings shortly after the child's birth in March 2018 due to concerns over the mother's alcohol and drug use. The mother admitted to using alcohol during the first five months of her pregnancy, and a nurse expressed concerns about the mother's use of medication prescribed to treat pain following her Cesarean section. When, at two weeks of age, the child weighed less and had a smaller head circumference than at birth, the child's doctor became concerned that the mother was not feeding the child properly. The mother's conduct during the child's hospitalization for an upper respiratory infection supported this belief.

The juvenile court ordered the child's removal from the mother's care in March 2018 and adjudicated the child to be in need of assistance the following month. The State filed a petition seeking to terminate the mother's parental rights in September 2018. Following a January 2019 hearing, the juvenile court entered its order terminating the mother's parental rights under Iowa Code section 232.116(1)(h) (2018). The mother appeals.[1]

---

[1] The father consented to termination of his parental rights, and he is not a party to this appeal.

## II. Grounds for Termination.

In order to terminate under Iowa Code section 232.116(1)(h), the State must prove the following by clear and convincing evidence:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother does not dispute that the State proved the first three elements. Instead, she argues that the State failed to prove the child could not be returned at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean to mean "at the time of the termination hearing").

Although the mother claims there "are minimal safety concerns" regarding her care of the child, the record shows otherwise. The mother has been involved in relationships marred by domestic violence. Although she claims the majority of the domestic abuse occurred with the man she was married to from 2012 to 2014, it also occurred during her four-year relationship with the child's father. The mother's continued involvement with the child's father led to multiple calls to police in the six months that preceded the termination hearing with the father damaging property and twice leaving marks on the mother. She testified that she is now equipped to make good choices with regard to future relationships based on "[l]essons learned," but she has not otherwise addressed this domestic-abuse

history or her mental health. The mother's involvement in these relationships poses a risk of harm to the child.

The mother also argues there is insufficient evidence concerning her alcohol or substance abuse, noting that when she completed a substance-abuse evaluation in August 2018, she did not meet the criteria for substance use related diagnosis and the evaluator recommended no treatment. However, that evaluation was based solely on the mother's self-reporting. As the evaluator noted:

> On the SASSI-4 Defensiveness scale (DEF) [the mother] scored a 9 which means that she appeared to be more defensive than 97% of people taking this test. DEF score that is 9 or more increase the possibility of the SASSI missing individuals with a substance abuse disorder. The inventory does not show [the mother] being defensive about substance abuse. While I do not perceive [the mother] having substance abuse problems, the inventory suggests that she may minimize evidence of personal problems. Elevated DEF score may reflect [the mother]'s reaction to her current situation, specifically, being involved in the child custody dispute, rather than a personality trait.

The mother admitted she used alcohol during the first five months of her pregnancy before learning she was pregnant. Her claims with regard to the frequency and amount of her alcohol use have varied. Although she reported to hospital workers that she drank a fifth of vodka every one-and-one-half days, she testified that referred to her alcohol use during her marriage some five years earlier rather than her use during her pregnancy. At the termination hearing, she initially testified that she would "have a couple of drinks after work, a couple of times a week" until she learned she was five months pregnant. She then downplayed her drinking further, claiming that during the first five months of her pregnancy "it wasn't every week or every month even, it was just whenever someone felt like going out,

maybe celebrate for a holiday or someone's birthday." Her varied claims regarding her alcohol use calls her credibility on this subject into question.

Because the mother's ability to report her alcohol use honestly is in question, the only objective way to measure her alcohol and substance use is through drug testing. However, the mother provided only one sample for drug testing out of the twenty-six times requested. That sample, provided in September 2018, tested positive for both alcohol and methamphetamine. Incredibly, she attributed the positive result to drinking Gatorade to which the child's father had added alcohol and methamphetamine in an attempt to "sabotage" her. The mother reported for testing on two other occasions, both in October 2018, but each time she was unable to provide enough of a sample for testing. Additionally, on the second occasion, "the drug collection log noted that she was acting strangely that day and it appeared that she had something between her legs and then left and walked out of the bathroom very awkwardly, stating she needed to get a drink of water and would be back, but never returned," leading to concerns that she was attempting to alter the test results. Finally, there were concerns about the mother falling asleep during visits with the child. Although the mother claimed she was only sleeping when the child slept, the providers were concerned that she would fall asleep while holding the child and would drop the child without realizing it. The mother is reportedly a heavy sleeper, and the providers had difficulty waking her up. These same concerns were present during the child's hospitalization, with the mother sleeping through the child's crying and missing the child's feedings, leaving the nursing staff to feed the child instead. The mother missed approximately one

fourth of her visits with the child, in part because she failed to confirm them because of oversleeping.

For the foregoing reasons, clear and convincing evidence establishes that the child could not be returned to the mother's care at the time of the termination hearing.

### III. Best Interests.

The mother also contends termination is contrary to the child's best interests. *See D.W.*, 791 N.W.2d at 706-07 ("If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights."). In making this determination, our primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code § 232.116(2)). The "defining elements in a child's best interest" are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

The mother argues termination is contrary to the child's best interests due to the close bond they share. *See* Iowa Code § 232.116(3)(c) (providing the court need not terminate parental rights upon a finding that termination would be detrimental to the child due to the closeness of the parent-child relationship). She argues the child would "suffer no harm if [she] were granted more time." We disagree. Although the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been

built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Once the grounds for termination have been proved, time is of the essence. *See In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) ("It is unnecessary to take from the children's future any more than is demanded by statute. Stated otherwise, plans which extend the [statutory] period during which parents attempt to become adequate in parenting skills should be viewed with a sense of urgency."); *see also In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting that once the time period for reunification set by the legislature has expired, "patience on behalf of the parent can quickly translate into intolerable hardship for the children").

Iowa Code section 232.116(1)(h) allows termination to occur if the child has been removed from the parent's care for six consecutive months. At the time of termination, the child had been out of the mother's care for approximately ten months—nearly the entirety of the child's life. The child's contact with the mother has been limited to two-hour visits. There is no evidence the bond between the child and the mother is so great that terminating it would be detrimental to the child. Given the child's need for permanency, there is no need to delay termination further in hope that the mother will someday be able to provide a stable home. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014).

We affirm the termination of the mother's parental rights to the child.

**AFFIRMED.**